Morris *vs.* Chapman's Administrator.—*June,* 1830.

Upon a bill being filed to recover the value of certain negroes, which M held in trust for the complainant, and which had been sold through the intervention of an agent who considered himself entitled to the proceeds, it was agreed between M and the agent, that if M would delay settlement and permit the agent to retain the money, and defend the bill, he would indemnify him from all loss. A final decree having passed against M, in an action brought upon his contract of indemnity, HELD, it was competent for the defendant to give in evidence, that he had apprised the plaintiff in due time of the nature of the defence, which he desired should be made to the suit, and of the sources by which he meant to establish it, so as to enable the plaintiff, by resorting to such evidence, to ascertain if he could be justified in putting in such an answer as was desired; and also to show that the plaintiff had failed to comply with his contract, by refusing to permit him to defend the bill.

If the defendant supplied the plaintiff with a proper answer, supported by such proofs as would furnish the latter with a reasonable ground to believe the facts stated in the answer to be true, he was bound by the spirit of his contract to have accepted and filed it, or put in answer containing in substance the same defence.

Whether such answer was furnished, and such proofs given as would lay a reasonable ground for the plaintiff's believing the defence set up by the defendant, was a question of fact for the jury, to be determined by an exhibition of the answer and proofs in support of it, as communicated to the plaintiff.

If the plaintiff in his conscience could not put in the answer furnished him by the defendant, good faith on his part demanded that he should have pointed out his objections and difficulties to the defendant.

APPEAL from *Charles* County Court.

*Assumpsit* by the appellant, *William Morris,* against the appellee, *John G. Chapman,* as administrator of *Samuel*

*Chapman,* brought on the 7th of March, 1825. The first *count* in the declaration stated, that the said *Samuel,* in his life-time, to wit, on the 18th September, 1818, acting for, and in behalf of the said *William,* who then and there had and held certain negro slaves, in trust for the use and benefit of a certain *Sarah Maddox;* he the said *Samuel,* at the request of the said *William,* sold and delivered to divers persons, the said negro slaves, and received therefor, the sum of $1457, to wit, on, &c. at, &c. which said sum of money the said *William* hath since paid, and satisfied to the said *Sarah Maddox* by, and under a decree of *Charles* County Court in Chancery sitting, of which said matters and things, the said *Samuel* in his life-time had notice, &c. There were also *counts* for money had and received, for money paid, laid out, and expended, and for matters, and articles properly chargeable in account. The defendant pleaded *non assumpsit,* to which issue was joined.

1. At the trial the plaintiff gave in evidence to the jury, the written authority from the plaintiff to the defendant's intestate to sell certain negroes, which negroes the plaintiff held in trust for *Sarah Maddox,* (formerly *Sarah Ware*) the complainant in a bill in Chancery hereinafter referred to, and also a written authority from said intestate to a certain *Robert Finch,* to sell part of the negroes, and his, the intestate's receipt, for the amount of said sales $1100, to wit, " *Charles* County, February 17th, 1818. I do hereby authorise *Samuel Chapman,* to sell and dispose of certain negroes (described by name) with their increase, as witness my hand and seal, the day and date above written. *William Morris,* (seal.)" "I do hereby authorise *Robert Finch* to sell *Louisa, Francis* and *Washington* (being the children of one of the female slaves mentioned in the authority from *Morris* to him) as witness my hand and seal this 17th day of April, 1818. *Samuel Chapman,* (seal.)" He then proved by a competent witness that the balance of said negroes was sold for $450, and that the net proceeds (deducting expenses,) amounting to $1457, were received by said *Chapman.* He

also read in evidence to the jury, the bill and exhibits filed by *Sarah Maddox*, against him the plaintiff, his answer, and supplemental answer thereto, the bill of interpleader filed by the defendant's intestate, and the decree of the Court, on the bill of the said *Sarah Maddox*, passed on the 9th of June, 1824, by which he was ordered and directed to pay her the sum of $654 20, with interest from the 31st January, 1818. He further proved, that after the passing of said decree, and a *fi. fa.* thereupon issued, had been levied on his property, he gave notice to the said intestate, that he was about to pay the money over to *Mrs. Maddox*, and if he wished to take any measures to arrest the same, now was the time. He then proved the payment of the money so decreed against him, in favor of *Sarah Maddox*. He further proved that some time after the filing of said bill of complaint by *Sarah Maddox*, and a little time before his, the plaintiff's answer thereto, was filed, (but the witness could not state the precise time,) the plaintiff, and the defendant's intestate went to the house of the witness, and said *Chapman* told the witness they had come to him to witness their contract. He, *Chapman*, then stated that *Mrs. Maddox* had filed a bill against *Morris* to recover the money, for which certain negroes had sold, and that *Morris* wished to settle the matter with *Mrs. Maddox*, and had called on him for the proceeds of the sale of said negroes to enable him to do so. *Chapman* also stated that he had agreed with *Morris*, that if he *Morris* would delay settling with *Mrs. Maddox*, and let the case go to final hearing, and permit him to retain the money, and defend the suit, that he, *Chapman*, would indemnify him, *Morris*, against all loss, that is, would repay to him every thing that should be recovered in that suit, together with all his expenses incurred in defending the same, both private and legal. The witness had been employed by *Morris*, as his solicitor in the case of *Sarah Maddox* against him. The witness then asked said *Chapman* what he wished done for him in that case, when *Chapman* replied that he did not employ wit-

ness as his solicitor, but should employ his own counsel to manage the cause. In answer to a question from the defendant's counsel, the witness stated, that he deduced from every thing that *Chapman* said, that he claimed an interest in the money for the recovery of which the bill was filed by *Sarah Maddox.* The plaintiff further proved, that the *subpœna* was returnable to August term, 1824, which was issued to compel the plaintiff to answer the bill of interpleader, filed by said *Chapman*, and that an attachment subsequently issued against him for the same purpose. The defendant then read in evidence to the jury, copies of the two following letters written by his intestate to the plaintiff, having previously proved the service of a notice on the plaintiff to produce the originals.

"Dear sir, I was not until last night informed of the contents of *Mrs. Maddox* bill, or your answer; at both I am equally surprised: first, that she should have sworn that she received no consideration for the negroes sold, and that you should have sanctioned it by admitting in your answer, that there would be a considerable amount due her, which you are ready and willing to pay her; when she and you both know, that when it was first determined that the negroes should be sold, it was with an express understanding that I was to purchase with the money arising from the sale, goods, &c. for the family to a considerable amount, and you both know I have done so; all which I can prove by indifferent, and incontestable testimony. Sir, this business comes in a questionable shape, and has at best a suspicious aspect, and if the business is not immediately settled, between *Mrs. Maddox* and yourself, character must be implicated, and the whole affair probed to the bottom, as I am determined mine shall not suffer. *Samuel Chapman.* May 4th, 1823."

" Dear sir, I again solicit your attention to this business of *Mrs. Maddox's*—you will perhaps say it is none of my business; such may be, and I believe it is the fact, but to prevent any misunderstanding between you and myself, in

the settlement of our accounts, (which I wish to take place immediately,) I have thought it well to inform you, that on seeing your property advertised, I intended to get a writ of injunction to stay the proceedings, and leave the money in your hands for my use; but on consulting counsel, was advised to have no more to do in the business; that having put in a bill of interpleader which had not been answered, either by *Mrs. Maddox* or yourself; that until that was done, under all the circumstances nothing can or ought to be claimed of me, either in law or equity. I was also informed, on enquiry as to the amount of the judgment, it was for about $90 or $95 more than it ought to have been, upon which ground you may obtain an injunction, and you can then by putting in your bill praying a reviewal, have the matter fully and fairly investigated, by which investigation you can prove *that every cent of the money* has been paid over, and that *Mrs. Maddox* has frequently and often said, that I did not owe one cent, but that she had received the whole. I have thought proper to give you again this *information*, least you might expect to get something *out of* me, and under this idea might be disappointed. You now have it completely in your power to defeat *Mrs. Maddox's* claim against you, and if you do not do so, recollect that it is not my fault. June 29th, 1824."

To the reading of these copies the plaintiff objected.

The defendant then offered to read in evidence, the draft of an answer which this intestate had prepared and sent to the plaintiff, for him to swear to and file, as his answer to the before mentioned bill by *Sarah Maddox*, and proved that the purport of the same was communicated to the plaintiff, by the person by whom it was sent. That said plaintiff refused to receive the said paper, and the witness who carried it back to said intestate told him he was not certain what answer the said plaintiff made when he offered him the said paper. Accompanying the said paper, there were two affidavits, one of which was sworn to on the 4th of June, 1823, going to establish the facts contained therein.

The plaintiff objected to the reading of these papers, but the Court allowed them to be read, and the plaintiff excepted.

The defendant then prayed the Court to instruct the jury, that if they should be of opinion from the evidence in the cause, that the defendant's intestate had by his contract assumed upon himself the defence of the case in Chancery by *Sarah Maddox* against *William Morris*, (the plaintiff,) so far as his *Chapman's* interest was involved therein, then that the defendant's intestate was absolved from his contract with *Morris* to repay to him whatever said *Sarah Maddox* might recover from him in said Chancery suit, and expenses, if said *Morris* refused to put in said answer, unless they should also find, that he pointed out his objections to said answer, at the time it was offered to him to be filed; which opinion and instruction the Court gave. The plaintiff excepted, and the verdict and judgment being for less than he claimed, he prosecuted the present appeal.

The cause was argued before BUCHANAN, Ch. J., MARTIN and ARCHER, J.

*Stonestreet* for the appellant.

1. The Court below erred in permitting to be read to the jury the copies of the two letters from *Chapman*, the intestate of the appellee, to the appellant. 1 *Phil. Ev.* 389.

2. That the answer, prepared and tendered by the appellant's intestate to *Morris* the appellee, and the accompanying affidavits, were inadmissible as evidence.

*C. Dorsey*, for the appellee, cited *Stark. Ev.* 17. *Douglass*, 635. 1 *Term. Rep.* 638. 7 *Ib.* 125. *Chitty on Plea.* 279, 339.

ARCHER, J., delivered the opinion of the Court.

It appears from the evidence in this cause, that *Sarah Ware* being about to intermarry with *John Maddox*, conveyed by bill of sale, dated the 28th December, 1807, sun-

dry negroes to the plaintiff, in secret trust for her use. That afterwards it was agreed that the plaintiff should sell the negroes, and that the proceeds should be held by the plaintiff for her benefit. On the 17th February, 1818, the plaintiff authorised the defendant to sell the negroes. That they were accordingly sold for the net sum of $1457. *Sarah Ware*, after her intermarriage with *John Maddox*, and after his death, instituted a suit in the County Court as a Court of Chancery, (at what time does not appear) against the plaintiff, alleging the trust and sale by the plaintiff, and praying that he might be compelled to account. Shortly afterwards, and before any answer had been put in by the plaintiff, the defendant, who had received the proceeds of the sale of the negroes, as agent of the plaintiff, entered into a contract with the plaintiff, by which he stipulated, that if the plaintiff would delay to settle with *Mrs. Maddox*, and let the case go on to final decree, and permit him to retain the money and defend the suit, that he would indemnify the plaintiff against all loss, that is, would repay to him every thing which should be recovered in that suit, together with all his expenses in defending the same, both private and legal. This agreement on the part of *Chapman*, appears to have been made, on account of an interest he supposed he had, in the monies claimed by *Mrs. Maddox* against the plaintiff. At the time of this agreement, the solicitor of the plaintiff desired to know of the defendant what he wished to have done for him, in that case, who declined to furnish the information, but stated that he would employ his own solicitor. Shortly after this agreement, about the month of August, 1821, (as may be collected from the affidavit attached to the answer) the plaintiff filed his answer to the bill of *Mrs. Maddox*, whereby he claimed sundry payments and disbursements from the funds, arising from the sale of the negroes, which had been made at the solicitation of the claimant, amounting to the sum of $892 80, and professed a willingness to pay to the complainant the balance of the proceeds of sale. Between the months of

May and August, 1823, the defendant transmitted to the plaintiff the draft of an answer to the bill of *Mrs. Maddox,* containing a reiteration of the answer which the plaintiff had already put in, and in addition thereto, a statement, that he had advanced very considerable sums of money, at the request, and with the concurrence of the complainant, to an amount beyond the proceeds of sale; and accompanied the said answer, with the affidavits of two witnesses, verifying some of the facts stated in the answer thus furnished, as connected with advances by the defendant.   This answer the plaintiff *not only refused to accept, but to examine.*   In the month of November, 1823, *Morris,* the plaintiff, filed a supplemental answer to the bill of *Mrs. Maddox,* in which he set out *in part* only the defence of the defendant, as set out in his answer which he had furnished.   And the Chancery suit was set down for hearing at June term, 1824, when a decree passed against *Morris,* for the sum of $654 20. It was further proved, that the plaintiff gave the defendant notice of the decree against him, and that he was about to pay the same, and that if he wished to take any measure to arrest the payment, that was the proper time.   The defendant in addition, offered in evidence copies of two letters, the one dated the 4th of May, 1823, and the other dated the 29th of June, 1824, twenty days after the decree, first having offered evidence of a notice to produce them.   The admission of these letters in evidence, constitutes the first objection to the opinion of the County Court.   It would have undoubtedly have been competent for *Chapman,* to have given evidence that he had apprised the plaintiff of the nature and character of the defence, which he desired should be made to the suit, and to have informed him of the sources by which he meant to establish such defences, so as to enable the plaintiff by resorting to such evidence, to ascertain if he could be justified in putting in such an answer as was desired.   A letter giving such information would have been admissible.   But the letter of the 4th of May, 1823, is not of this character.   It is a letter only ap-

pealing to the plaintiff's knowledge, that he had expended at the request of *Mrs. Maddox* a considerable sum, and abusing him for the answer he had filed.   It is true, he says, that he can establish the facts, which he alleges are within the plaintiff's knowledge, but he does not point to the persons who would prove them.   This letter was therefore not calculated to enable the plaintiff to comply on his part with the agreement.   It gave him no further information, as it admits, than what he had.   The second letter we think is still more objectionable.   It was written after the decree, when the contract between the parties was either fulfilled or violated.   After such a period nothing which either party might say in relation to the matter, could be evidence for himself.   The Court below permitted the defendant to read in evidence the answer furnished by the defendant to the plaintiff, to be filed as the plaintiff's answer to the bill; and also permitted, as appears by the last bill of exceptions in the record, two depositions to be read to the jury which had accompanied the answer—in this we think the Court were right.   It was competent for the defendant to show that the plaintiff had failed to comply with his contract, in refusing to permit him to defend the suit, and if he had supplied him with a proper answer, supported by such proofs, as would furnish the plaintiff with a reasonable ground to believe the facts stated in the answer to be true, he was bound by the spirit of his contract to have accepted and filed it, or to have put in an answer, containing in substance the same defence.   And whether such answer was furnished and such proofs given, as would lay such a reasonable ground, was a question of fact for the jury, and could only be proved by exhibiting to the jury the answer itself and the proofs offered.   They were not offered with any other view, nor could they be.   They were no evidence to the jury of the truth of any fact therein stated, but only evidence to shew that *Chapman* had offered to defend, and his defence was such, as ought to have been accepted, or filed in the cause by the plaintiff.   The direction of the

Court in relation to the contract, turns altogether on the plaintiff's obligation to point out objections to the answer furnished, if he did not think proper to accept it. We however have taken a different view of the duties of the parties under this contract. *Chapman* was to be allowed to defend the suit, but it could only be done through the intervention of the plaintiff. If *Chapman* had furnished an answer, supported by such proofs as would give the plaintiff reasonable grounds for believing the truth of the facts he stated, the plaintiff was bound to have accepted it, or to have filed an answer, containing in substance the defence it set up, and could not discharge himself from such obligation by stating objections to it. The compliance of *Chapman* with his contract was solely to be determined, by the character of the defence made and offered. If that was of the description above mentioned, and it had been rejected, the defendant would have been absolved from his contract, unless the plaintiff had himself filed an answer, containing the substantial defences set up in the rejected answer. Although the answer furnished had not been accepted, still *Chapman* would have been bound if the plaintiff had put in an answer containing in substance the defence of the defendant. If this proposition be true, and we think it cannot be denied, it conclusively shows that the opinion of the Court below in this respect was erroneous, for then he might have rejected the answer, have assigned no reasons, yet by putting in an answer in his own way, but containing the substance of the rejected answer, might still have held the defendant to his contract. The directions of the Court appears to be bottomed on the hypothesis, that the answer was such, as the plaintiff could not put in ; and if the prayer had been so framed, we should not have objected to the directions given, in the form in which they were, to the jury. For if the defendant, endeavoring to comply with his contract, had furnished an answer which the plaintiff in his conscience could not put in, good faith on his part would seem to have demanded, that he should have

pointed out his objections and difficulties to the defendant, that he might have been enabled so to shape his defence, that the plaintiff could conscientiously have made it. It has been stated that it would have been competent for the plaintiff after having rejected the answer, to have held the defendant to his responsibilities under the contract, provided he had filed an answer himself, covering in substance, the defence which the defendant desired should be made, and it has been urged in the argument that this has been done. But a reference to the supplemental answer will show, that it did not cover the defence which the defendant had set up.

**JUDGMENT REVERSED AND PROCEDENDO AWARDED.**